UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ARCHIE LEE LOONEY,

    Plaintiff,

    v.

CORRECTIONAL OFFICER VAN-
HORN,

    Defendant.

CAUSE NO. 3:18CV18-PPS/MGG

OPINION AND ORDER

Archie Lee Looney was granted leave to proceed against Correction Officer Vanhorn in his individual capacity for compensatory damages for denying necessary medical care to Looney on April 3, 2017, in violation of the Eighth Amendment. Officer Vanhorn now seeks summary judgment (ECF 70) contending that the undisputed material facts entitle him to judgment as a matter of law because: (1) Looney was not suffering from an objectively serious medical condition when he encountered Officer Vanhorn on April 3, 2017; (2) Vanhorn did not know of and disregard a serious risk to Looney's health; and (3) Vanhorn is entitled to qualified immunity. Looney has filed a response and Officer Vanhorn has filed a reply.[1] (ECF 86; ECF 91.) I will focus my

---

[1] In his reply brief, Officer Vanhorn argues that I should strike Looney's response or disregard the facts included in the response because they are unsupported by evidentiary citation. (ECF 91 at 5.) Officer Vanhorn, however, has made this request in violation of Northern District of Indiana Local Rule 7-1, which requires that motions be filed separately. In light of Officer Vanhorn's own rule violation and Looney's *pro se* status, the request to strike Looney's response brief will not be entertained. It is noted, however, that while I am only required to consider the material cited in the respondent's "Statement of Genuine Disputes," I may consider other material in the record. Fed. R. Civ. P. 56(C)(3). Here, I am

attention on his second argument – whether Vanhorn knew of and disregarded Looney's serious medical condition.

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying" the evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In ruling on a motion for summary judgment, I must view all facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. I will not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

Here are the facts recited in the light most favorable to Looney. On April 3, 2017, Looney was an inmate incarcerated at Miami Correctional Facility and Officer Vanhorn

---

exercising my authority to consider other material in the record, including Looney's deposition testimony. (ECF 71-1.)

2

was a Correctional Officer in the area where Looney was housed. (ECF 1; ECF 71-2 at ¶¶ 2, 4-5.) The unit had been on lockdown since the preceding day. (ECF 71-1 at 10.) While on lockdown, offender movement is limited - inmates are at the mercy of guards to let them out of their cells so they can use the restroom or get water. (*Id.*; ECF 71-2 at ¶ 6.)

Early on the morning of April 3, 2017, around 2:30 a.m., the inmates on Looney's block were permitted an opportunity to use the restroom and get a drink. (ECF 71-1 at 13.) When Looney went to the restroom, he started hurting. (*Id.*) According to Looney, it felt like he was getting electric shocks down his back and side, and he was barely able to walk. (*Id.* at 13, 15.) He was suffering from spasms, and he had never experienced pain like this before. (*Id.* at 14-15, 22-23.) Looney approached Officer Vanhorn and asked him to call for medical help. (*Id.* at 10, 13.) Officer Vanhorn asked what was wrong, and Looney indicated that his back was "killing [him] around [his] kidney area." (*Id.* at 13.) Officer Vanhorn responded by telling Looney to fill out a medical request. (*Id.* at 11, 13; ECF 71-2 at ¶ 12.) Looney replied by stating, "[m]an, a medical request would take seven days before I get seen. I need, you know, medical help now." (ECF 71-1 at 13-14.) Officer Vanhorn responded by stating "I don't' give a fuck" and telling Looney to "[l]ock back down." (*Id.* at 14; *see also* ECF 86 at 3; ECF 86-1 at 1-5.) Officer Vanhorn does not concede that he used this language, but I will assume he did for present purposes. In either event, he does concede that Looney was told to return to his cell because the facility was on lock-down. (ECF 71-2 at ¶ 13.) Looney estimates his

conversation with Officer Vanhorn lasted two and a half to three minutes. (ECF 71-1 at 15.) Following this brief conversation, Looney went to lay down. (*Id.* at 14-15.)

Looney believed that, based on the information he provided to Officer Vanhorn, a "signal 3000" for a medical emergency should have been called. (*Id.* at 23.) Officer Vanhorn, however, reports that he observed that Looney was conscious, breathing regularly, had no excessive bleeding, no severe burns and was ambulating without assistance. (ECF 71-2 at ¶ 10.) Officer Vanhorn did not believe that Looney was suffering from a medical emergency. (*Id.* at ¶¶ 9, 11.) Nevertheless, he reported Looney's complaints to his unit sergeant. (ECF 71-2 at ¶ 14.) Shortly thereafter, the unit sergeant told Officer Vanhorn that medical did not need to see Looney. (ECF 71-2 at ¶ 15.)

In the hours following his conversation with Officer Vanhorn, Looney's symptoms would come and go. (ECF 71-1 at 21-22.) He was able to rest for several hours, and he did not request medical care from any other correctional officer in the next twelve hours. (*Id.* at 15, 21-22.) Later in the day, Looney began to experience stronger spasms or convulsions, and he started throwing up. (*Id.* at 11, 15, 22-23.) On April 3, 2017, at approximately 3:00 p.m., Looney was doubled over on his bed, holding his abdomen with one hand and his lower back with the other. (ECF 71-3.) Looney reported being unable to use the restroom and unable to stand. (*Id.*) The situation was treated as a medical emergency, and a signal 3000 was called. (*Id.*) He was admitted to the infirmary in critical condition and diagnosed with a urinary tract infection. (ECF 71-1 at 11.)

In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976). A medical need is "serious" if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks, brackets, and citation omitted).

At the point in time that Looney asked Officer Vanhorn to contact medical for him, a doctor had not diagnosed Looney with a condition mandating treatment. Thus, I must determine if, based on the undisputed facts taken in the light most favorable to Looney, his medical need was "so obvious that even a lay person would easily recognize the need for a doctor's attention." *See Greeno*, 414 F.3d at 653. Obviously, Looney did need medical attention – he was suffering from a urinary tract infection and became gravely ill within hours of his conversation with Officer Vanhorn. The issue, however, is what Officer Vanhorn knew when he made the decision not to call for medical help. At that time, Officer Vanhorn knew that Looney indicated that his back was "killing [him] around [his] kidney area." (ECF 71-1 at 12.) Officer Vanhorn

5

observed that Looney was conscious, breathing regularly, had no excessive bleeding, no severe burns and was ambulating without assistance. (ECF 71-2 at ¶ 10.)

Based on the limited information that Officer Vanhorn had when he declined to call for emergency medical assistance for Looney, no reasonable factfinder could find that a layperson should have concluded from those facts that Looney needed a doctor's immediate attention. Perhaps Officer Vanhorn should have asked more questions. If he did, he might have learned more details from Looney. Perhaps Looney would have described the feeling of electrical shocks down his back and side and explained that he had never had a similar feeling before. Perhaps he would have described the spasms he was experiencing. Perhaps he would have explained to Officer Vanhorn that, while he was walking, it was a struggle because he was in so much pain. Perhaps a more caring individual would have checked on Looney before his shift was over to see how he was doing. Certainly, a more caring individual would not have indicated that he did not "give a fuck." (ECF 71-1 at 14; *see also* ECF 86 at 3; ECF 86-1 at 1-5.)

One would hope that jail guards comport themselves with a degree of compassion. But for better or worse, the Constitution does not mandate it. Instead, the Constitution requires that guards summon medical care for an inmate when the need is so obvious that even a layperson would recognize the need. Here, no reasonable fact finder could reach that conclusion based on the limited information that Officer Vanhorn possessed at the time he refused to seek immediate medical care for Looney. An additional indication that Vanhorn was not deliberately indifferent to Looney's medical needs is that, rather than do nothing at all, Vanhorn reported the situation to

his supervisor, who confirmed Looney's determination that immediate medical attention was not warranted at that time.

While Looney has every reason to be angry and disappointed with how Officer Vanhorn handled his request for medical care on the night of April 3, 2017, the facts before the court, even when taken in the light most favorable to Looney, do not suggest that Officer Vanhorn violated Looney's Eighth Amendment rights.

ACCORDINGLY:

Officer Vanhorn's motion for summary judgment (ECF 70) is GRANTED.

The clerk is DIRECTED to enter judgment in favor of Officer Vanhorn and against Archie Lee Looney.

SO ORDERED on January 16, 2020.

/s/ Philip P. Simon
JUDGE
UNITED STATES DISTRICT COURT